```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

DIRECTV, LLC.,
                    Plaintiff,

    -against-

JUAN F. BORBON and NURINALDA VIERA,
Individually, and as officers,
directors, shareholders, and/or              MEMORANDUM AND ORDER
principals of MILLENNIUM CHICKEN III,
CORP., d/b/a MILLENNIUM CHICKEN,
                                             14-CV-3468 (KAM)(LB)
and

MILLENNIUM CHICKEN III, CORP., d/b/a
MILLENNIUM CHICKEN,

                    Defendants.

-------------------------------------X
```

**MATSUMOTO, United States District Judge:**

        Plaintiff DirecTV, LLC. ("plaintiff") brought this action against defendants Juan F. Borbon and Nurinalda Viera, individually and as officers, directors, shareholders, and/or principals of Millennium Chicken III, Corp. d/b/a Millennium Chicken ("Millennium Chicken" or "the establishment"), and against defendant Millennium Chicken (collectively, "defendants"), for alleged violations of 47 U.S.C. § 605 ("Section 605"), 18 U.S.C. § 2511, and for civil conversion. (Am. Compl. ¶¶ 24-39, ECF No. 5.)  On September 26, 2014, following a notation of default by the Clerk of the Court dated

1

August 28, 2014 (Entry of Default, ECF No. 14), plaintiff moved for default judgment on its Section 605 claims, seeking statutory damages of $10,000 and enhanced damages of up to $100,000 against each defendant pursuant to 47 U.S.C. § 605(e). (Pl.'s Mot. for Default J., ECF No. 15.) Plaintiff additionally seeks attorney's fees and costs in the aggregate of $3,540.75 against each defendant separately.[1] Defendants have not submitted any opposition to plaintiff's motion, despite receiving notice and having been provided with an opportunity to do so. (See Certificate of Service dated Sept. 26, 2014, ECF No. 15-11.)

For the reasons set forth below, plaintiff's motion for default judgment is granted and judgment awarded for plaintiff against defendants, jointly and severally,[2] in the

---

[1] The Amended Complaint also contains claims for damages, litigation costs, and declaratory and injunctive relief pursuant to 18 U.S.C. § 2520(b) for violation of 18 U.S.C. § 2511, as well as punitive damages, pre- and post-judgment interest, and injunctive relief pursuant to 47 U.S.C. § 605(e)(3)(B)(i). (Am. Compl. at 8.) Plaintiff's motion for default judgment, however, seeks only statutory and enhanced damages as well as costs and attorney's fees pursuant to 47 U.S.C. § 605(e)(3) for violation of Section 605(a). (Pl.'s Mot. for Default J.) Consequently, the court considers plaintiff to have abandoned its claims under 18 U.S.C. § 2520(b) and for an injunction pursuant to 47 U.S.C. § 605(e)(3)(B)(i). See J & J Sports Prods., Inc. v. Benson, No. CV 06 1119, 2007 WL 951872, at *1 n.1 (E.D.N.Y. Mar. 27, 2007) (declining to consider plaintiff's request for injunctive relief in the complaint when plaintiff's papers filed in connection with the motion for default judgment made no request for injunctive relief).

[2] The court limits the award to a single recovery against the individual defendants and the corporate defendant, jointly and severally. See, e.g., Benson, 2007 WL 951872, at *7; Garden City Boxing Club, Inc. v. Morales, No. 05-CV-0064, 2005 WL 2476264, at *10 (E.D.N.Y. Oct. 7, 2005).

total amount of $3,051.38, inclusive of statutory damages of $1,000, attorney's fees of $1,166.38, and costs of $885.

## I. Background

Based on the allegations of the amended complaint, the court accepts the following facts as undisputed based on defendants' default. Plaintiff is a major distributor of satellite programming doing business in the United States. (Am. Compl. ¶ 5.) Plaintiff provides programming licenses for its proprietary broadcast programming via encrypted satellite signal to subscribers in exchange for a subscription fee. (*Id.*) These licensed subscribers receive specialized equipment that enables them to unscramble and receive the satellite programming. (Am. Compl. ¶¶ 5, 17.) Plaintiff provides services to residences based on residential rates and to commercial establishments at higher commercial subscription rates. (Am. Compl. ¶ 18; Pl.'s Aff. ¶ 6, ECF No. 15-1.)

Defendants Borbon and Viera are "officers, directors, shareholders, and/or principals of [Millennium Chicken]," a commercial establishment located at 275 W. Old Country Road, Hicksville, NY 11803. (Am. Compl. ¶¶ 6-7, 12.) As such, Borbon and Viera had "supervisory capacity and control over the activities" within the restaurant establishment on June 14, 2013. (Am. Compl. ¶ 13.) Defendants did not possess a valid

DirecTV commercial account for Millennium Chicken on June 14, 2013. (Am. Compl. ¶ 19; Pl.'s Aff. ¶ 9, 11.)

On June 14, 2013, at approximately 2:49 p.m., an independent auditor hired by plaintiff to identify businesses that "unlawfully exhibit DIRECTV residential programming in a commercial setting" visited Millennium Chicken and observed one television displaying DirecTV programming. (Pl.'s Aff. ¶¶ 8, 10.) The auditor estimated the establishment's fire code capacity to be between 50-100 persons. (Karlak's Aff., attached as Ex. A to Pl.'s Aff.) Based on the court's review of Exhibit B attached to plaintiff's affidavit, a video of the auditor's visit, it appears that there was one individual depicted who was either an employee or a patron of Millennium Chicken at the time of the auditor's visit. (See Ex. B of Pl.'s Aff.)

The complaint alleges in numerous instances that defendants did not possess a valid commercial account for Millennium Chicken on June 14, 2013, and thus did not have permission from DirecTV to "receive, broadcast, use, or display DirecTV's Satellite Programming" in Millennium Chicken. (See, e.g., Am. Compl. ¶ 19-21.) Defendants allegedly "order[ed] programming for residential use and subsequently display[ed] the programming in a commercial establishment for commercial gain without authorization . . . ." (Am. Compl. ¶ 25.) Plaintiff affirms that because "residential and commercial

4

subscribers use the same satellite receiving equipment," commercial establishments "may surreptitiously move satellite hardware listed on a residential account to their commercial establishment" without DirecTV's knowledge or permission. (Pl.'s Aff. ¶ 7.) Plaintiff states that "[i]t is also possible for a commercial establishment to intentionally and fraudulently establish a residential DirecTV account." (Pl.'s Aff. ¶ 7.)

Thus, plaintiff alleges that by displaying DirecTV programming at their place of business, "[d]efendants' acts were unauthorized, willful, and for purposes of direct or indirect commercial advantage or private financial gain," in violation of 47 U.S.C. § 605(a). (Am. Compl. ¶¶ 21, 26.) Plaintiff filed the instant action on June 3, 2014, after several months of negotiations with defendants did not ultimately result in settlement. (See Aff. of Pl.'s Att'y ¶ 14.) Plaintiff served copies of the summons and amended complaint on July 2, 2014 on Borbon and Viera, and on Millennium Chicken on June 30, 2014. (Certificate of Default, ECF No. 13-2.)

## II. Discussion

A. *Default Judgment Standard*

Rule 55(b) of the Federal Rules of Civil Procedure provides that the court may enter judgment against

the defaulting party when a plaintiff moves against an adverse party who has failed to answer or otherwise appear in the action. When a default judgment is entered, defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except for the claims relating to damages. See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Moreover, an inquest by affidavit, without an in-person hearing, may be conducted as long as the court can ensure "a basis for the damages specified in the default judgment," although Fed. R. Civ. P. 55(b)(2) permits the court to hold a hearing. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)(quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). Thus, the movant need only adequately allege liability in its complaint to be entitled to relief after an entry of default, but a default does not establish the extent of damages proximately caused by a defendant's conduct. Greyhound, 973 F.2d at 158-59.

**B.** *Liability*

Title 47, section 605(a) of the United States Code provides in pertinent part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport,

6

> effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Section 605 applies to radio communications, which includes television programming transmitted or intercepted by satellite, as in the instant case. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130-133 (2d Cir. 1996). The statute also provides for a private right of action for aggrieved parties. 47 U.S.C. § 605(e)(3)(A). A plaintiff's undisputed allegation that defendants have utilized a residential account to display programming in a business is sufficient to establish liability under Section 605. See, e.g., Kingvision Pay-Per-View, Ltd. v. Mendez, No. 03CV2170, 2006 WL 3833014, at *5 (E.D.N.Y. Dec. 28, 2006). As the undisputed allegations in plaintiff's filings demonstrate that defendants intercepted, received, and broadcast DirecTV satellite programming without authorization at Millennium Chicken (Am. Compl. ¶ 25), their conduct violates 47 U.S.C. § 605(a). See, e.g., J & J Sports Prods., Inc. v. Mangos Steakhouse & Bakery, Inc., No. 13 CV 5068, 2014 WL 2879868, at *4 (E.D.N.Y. May 7, 2014).

**B. *Individual Defendants' Liability***

To establish vicarious liability for the individual defendants Borbon and Viera, plaintiff is required to

demonstrate that they "authorized the violations set forth in the complaint." Id. Further, "[plaintiff] must show that . . . [Borbon and Viera] had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." Id. (quoting Morales, 2005 WL 2476264, at *10).

Here, plaintiff's undisputed allegations state that the individual defendants, Borbon and Viera, are "officers, directors, shareholders, and/or principals" of Millennium Chicken, and had "supervisory capacity and control over the activities," "internal operating procedures" and "employment practices" of Millennium Chicken. (Am. Compl. ¶¶ 7, 13, 15.) Plaintiff also alleges that Borbon and Viera "received a financial benefit from the operations of" Millennium Chicken. (Am. Compl. ¶ 14.) The court notes that a minority of courts in this district have not found vicarious liability in similar circumstances, because "the plaintiff had not demonstrated sufficient control by the owner or financial interest in the violation." Mangos, 2014 WL 2879868, at *5 n.9 (rejecting this minority view due to the "difficulty that plaintiffs face in producing evidence in default cases"). In light of the difficulty that plaintiffs face in producing evidence in default cases and in keeping with the majority of courts in this district, the court accepts plaintiff's allegations as

true and finds the individual defendants vicariously liable. See id. Accordingly, the court finds defendants Borbon and Viera jointly and severally liable for damages awarded in this action.

**C.** *Damages*

Unlike allegations pertaining to liability, those pertaining to damages are not deemed admitted in the context of a motion for default judgment. Benson, 2007 WL 951872, at *4 (citing Greyhound, 973 F.2d at 158). Therefore, plaintiff must establish its entitlement to the recovery of damages. See id.

**1. Statutory Damages**

Section 605 provides that an aggrieved party may elect to recover either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiff here has requested maximum statutory damages of $10,000 pursuant to section 605(e)(3)(C)(i)(II). (Pl.'s Mot. for Default J.) Upon a finding that defendants are liable, an aggrieved party is entitled to an award of statutory damages for each violation of section 605(a) in an amount between $1,000 and $10,000, as the court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II); see DIRECTV, Inc. v. Rodriguez, No. 03CV4590, 2007 WL 1834676, at *3 (E.D.N.Y. June 26, 2007). While there is no statutory definition of what constitutes a single "violation" under Section 605, courts have considered the airing of programming

9

on one night to constitute one violation. See, e.g., Garden City Boxing Club, Inc. v. Rosado, No. 05 CV 1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005) (considering the airing of a boxing event to be one violation).

In setting the amount of statutory damages, some courts employ a flat damage assessment per violation. See, e.g., Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 WL 1488110 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages for a one-time violation). When presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized broadcast, other courts have employed a formula that multiplies the number of patrons by a court-determined damage award (typically of $50 per patron), see, e.g., Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (awarding $50 per patron and collecting cases), or by the residential fee that would have been charged for the programming, see, e.g., J & J Sports Prods., Inc. v. Arhin, No. 07 CV 2875, 2009 WL 1044500, at *6 (E.D.N.Y. April 17, 2009) (calculating statutory damages by multiplying the number of customers present by the residential rate of programming for the pay-per-view event).

Plaintiff here has not submitted an estimate of the value, or a range of values, of the services defendants have

misappropriated.  Plaintiff also has not submitted evidence alleging the number of patrons physically present in Millennium Chicken at the time of the audit, but rather alleges an approximate seating capacity of 50 to 100 persons.  (Karlak's Aff., attached as Ex. A to Pl.'s Aff.)  Plaintiff has not detailed its pricing structure for a business such as Millennium Chicken, nor compared it to the residential pricing structure that it alleges defendants utilized in its attempt to evade the "more expensive" subscription fees associated with business pricing. (Pl.'s Aff. ¶ 6.)  This information was almost certainly available to the plaintiff as a major distributor of satellite programming, notwithstanding other difficulties in ascertaining information due to defendants' default.

Given the paucity of reliable information provided by the plaintiff, the court declines to perform a per-patron calculation of the statutory damages to which plaintiff is entitled.  The court finds that the statutory minimum of $1,000 is an appropriate award against defendants, jointly and severally, for their single violation of section 605(a). See Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (awarding statutory minimum damages when plaintiff failed to submit evidence of costs and fees).  Based on the auditor's video recording, which

shows no more than one individual who may be a patron in the restaurant, the court also notes that had it applied the per-patron calculation formula, the damage award in this case would likely fall below the statutory minimum of $1,000. (See Ex. B of Pl.'s Aff.); see also Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp. 2d 59, 63-64 (E.D.N.Y. 2006) (awarding statutory minimum of $1,000 when per-patron calculation would lead to damages under the minimum). Thus, the court finds a flat award of $1,000 in statutory damages is appropriate here. See Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding flat damages based on the court's view of the equities and not the estimated number of patrons).

**2. Enhanced Damages**

Plaintiff further seeks enhanced damages against defendants for their willful conduct. When plaintiff proves that the violation was committed willfully and for the "purposes of direct or indirect" financial gain or advantage, the court may increase the damage award within its discretion up to $100,000 for each violation. § 605(e)(3)(C)(ii). Courts will consider the following factors in determining whether to award enhanced damages, which are not evident here: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to

12

plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." Benson, 2007 WL 951872, at *5 (citing Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003)). Enhanced damages are awarded when statutory damages have been found not to provide sufficient deterrence to defendants in response to their willful disregard of the law. See id. at *2; see also Cablevision Systems New York City Corp. v. Diaz, No. 01CIV.4340, 2002 WL 31045855, at *4 (S.D.N.Y. July 10, 2002).

In determining the amount of enhanced damages to award, courts in this circuit take varying approaches, consistent with the discretion that the statute permits. See, e.g., J & J Sports Prods., Inc. v. Onyx Dreams, Inc., No. 12 CV 5355, 2013 WL 6192546, at *6–7 (E.D.N.Y. Nov. 26, 2013) (awarding enhanced damages of two times the statutory damages award); J & J Sports Prods., Inc. v. Martinez, No. 07 CV 3455, 2009 WL 1913239, at *2 (E.D.N.Y. June 30, 2009) (awarding zero enhanced damages where plaintiff failed to show repeated violations over time, substantial unlawful gains, significant actual damages, and defendant's advertising for broadcast or charging a premium or cover).

Here, plaintiff alleges, without any evidentiary support, that the defendants' willful conduct was for financial

gain and harmed plaintiffs. Plaintiff also does not allege nor provide any evidentiary support for the enhanced damages factors. The programming displayed on defendants' television in this action was regular subscription programming, and the complaint alleges the defendants paid a residential subscription for the programming. (Am. Compl. ¶ 25.) Where, as here, the defendants did not intercept pay-per-view programming, have not been shown to be repeat offenders, nor are shown to have profited greatly from their violation while causing significant actual damages to plaintiff, the factors weigh against enhancement. See Benson, 2007 WL 951872, at *5. Although plaintiff's allegations that defendants' conduct was willful and for financial gain are uncontested, (Am. Compl. ¶ 20,) they are coupled with general and unsupported allegations that DirecTV has suffered financially and lost goodwill as a result of such conduct. (Am. Compl. ¶ 28.)

The court thus finds that plaintiff is not entitled to any enhanced damages, as the statutory minimum damage award discussed above sufficiently addresses the defendants' violation as alleged in the complaint and provides sufficient deterrence. See Martinez, 2009 WL 1913239, at *2.

**D.** *Plaintiff's Attorney's Fees and Costs*

Section 605(e)(3)(B)(iii) entitles a court to award litigation costs and reasonable attorney's fees to a prevailing

14

party.  As required by the Second Circuit, plaintiff here has submitted contemporaneous time records that illustrate "for each attorney, the date, the hours expended and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir.1983).  Plaintiff's attorney's affidavit contains a table listing attorneys' hours from contemporaneous time records, which adequately satisfies this requirement. J & J Sports Prods., Inc. v. Alvarez, No. 07 CIV. 8852, 2009 WL 3096074, at *6 (S.D.N.Y. Sept. 25, 2009) (citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (accepting a "typed listing of [attorneys'] hours from their computer records"). Plaintiff seeks $2,655.75 in attorney's fees, based on the following rates and expenditures: $350 per hour for 0.55 hours of partners' time; $250 per hour for 8.20 hours of associates' time; and $95 per hour for 4.35 hours of paralegals' time. (Aff. of Pl.'s Att'y ¶ 14.)

  **1. Reasonableness of Hourly Rates**

  Hourly rates charged should be "in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz, 34 F.3d at 1159 (quoting Blum v. Stetson, 465 U.S. 886, 896 n.11 (1984)).  The "prevailing community" in this context is usually "the district in which the court sits."

Id. (quoting Polk v. New York State Dep't of Correctional Servs., 722 F.2d 23, 25 (2d Cir. 1983)). The "most useful starting point" in determining reasonable attorney's fees is the number of hours "reasonably expended on the litigation multiplied by the reasonable hourly rate." J & J Sports Prods., Inc. v. Welch, No. 10-CV-0159, 2010 WL 4683744, at *5 (E.D.N.Y. Nov. 10, 2010) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). The court has "considerable discretion" to set a reasonable hourly rate. Id. (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2007)). The district court should be guided by what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. Arbor Hill, 522 F.3d at 184.

Based on the prevailing hourly rates in this district, this court finds that the requested hourly rates for both attorneys and paralegals must be reduced. In cases of this nature, hourly rates between $150-$200 for attorneys and $75 for paralegals are most appropriate and in line with similar cases in this district. See, e.g., Joe Hand Promotions, Inc. v. Blais, No. 11-CV-1214, 2013 WL 5447391, at *7 (E.D.N.Y. Sept. 30, 2013) (finding $200 a reasonable hourly rate for attorney's fees); Circuito Cerrado Inc. v. La Camisa Negra Rest. & Bar Corp., No. 09-CV-5181, 2011 WL 1131113, at *6-7

(E.D.N.Y. Mar. 7, 2011), report and recommendation adopted, 2011 WL 1131130 (E.D.N.Y. Mar. 28, 2011) (reducing associate's rate to $150 per hour from $200 per hour, but finding $75 per hour appropriate for paralegals' rates); J&J Sports Prods., Inc. v. Castrillon, No. 07-CV-02946, 2009 WL 1033364, at *4 (E.D.N.Y. Apr. 16, 2009) (finding that $200 per hour was an appropriate rate for an attorney, and $75 per hour appropriate for a paralegal).

Plaintiff here lists two associate attorneys with varying levels of experience in its affidavit, one with six years of federal civil practice experience and the other with two years, but does not specify which attorney was responsible for which tasks. (Aff. of Pl.'s Att'y ¶ 13-14.) The court notes that the attorney of record in each filing is the junior attorney with two years of experience. The court also notes the "boilerplate" nature of submissions in cases under Section 605. See Kingvision Pay-Per-View, Ltd., v. Soluna Bar & Lounge, Inc., 06-CV-5066, 2008 WL 2673340, at *6-7 (E.D.N.Y. May 27, 2008) (counsel's charged hourly rate of $250 deemed excessive in Section 605 case where papers were virtually identical to those submitted by counsel in other infringement actions and lowering the rate to $200). In light of the foregoing considerations, the court finds that the prevailing rates in the district justify reducing counsel's hourly rates for this

17

case to $200 for partner's time, $150 for associates' time, and $75 for paralegals' and legal assistants' time. See, e.g., Circuito Cerrado Inc., 2011 WL 1131113, at *6-7; Castrillon, 2009 WL 1033364, at *4.

Plaintiff also seeks litigation costs for filing fees in the amount of $400 and service of process fees in the amount of $485. (Aff. of Pl.'s Att'y ¶ 13.) The court finds these rates reasonable based on the documentary evidence presented, and grants plaintiff reimbursement for these expenses in the total amount of $885.

**2. Reasonableness of Time Spent**

An award of attorney's fees must not only be based on reasonable rates, but the time spent on the litigation must also be necessary and reasonable. Morin v. Nu-Way Plastering, Inc., No. CV 03-405, 2005 WL 3470371, at *3 (E.D.N.Y. Dec. 19, 2005). The "boilerplate" nature of default judgments in cases involving Section 605 has led a court in this district to find that an expenditure of 9.7 hours of attorney's time is excessive. See Joe Hand Promotions, Inc. v. Terranova, No. 12-CV-3830, 2014 WL 1028943, at *9 (E.D.N.Y. Mar. 14, 2014) (reducing attorney's fees by 66% based on excessiveness of both hours and rates billed). The time spent on this case, which includes what appears to be failed settlement negotiations before the commencement of this action, total 12.55 hours over

18

a period of more than one year. (Aff. of Pl.'s Att'y ¶ 14.)
Despite the additional two hours that counsel for plaintiff
expended on initial settlement negotiations, the court finds
that the cumulative 12.55 hours is unreasonably high for the
instant litigation.  (Aff. of Pl.'s Att'y ¶ 14.)

In order to arrive at a reasonable attorney's fee
award, the court reduces the total time expended on this
litigation by 30% because the time spent on the boilerplate
submissions is excessive. See Terranova, 2014 WL 1028943, at
*9.  The court therefore grants plaintiff recovery of
reasonable attorney's fees in the total amount of $1,166.38,
based on the following calculations: $200 per hour for 0.385
hours of partners' time, $150 per hour for 5.74 hours of
associates' time, and $75 per hour for 3.045 hours of
paralegals' and legal assistants' time.

**Conclusion**

For the foregoing reasons, the court enters judgment for plaintiff against defendants, jointly and severally, in the total amount of $3,051.38, comprised of statutory damages of $1,000, attorney's fees of $1,166.38, and costs of $885.00. The Clerk of the Court is respectfully directed to enter judgment in favor of plaintiff in the amount of $3,051.38.

**SO ORDERED.**

Dated:    July 29, 2015
             Brooklyn, New York

                                          _____/s/_____
                                            Kiyo A. Matsumoto
                                            United States District Judge